IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JIMMIE GHOLSON, *et al.*, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| V. ) | Civil No. 04-cv-838-JPG |
| ) | |
| UNITED STATES OF AMERICA, *et al.*, ) | |
| ) | |
| Defendants. ) | |

### MEMORANDUM AND ORDER

Before the Court is Defendant Lockridge's motion for summary judgment (Doc. 89). Plaintiff Jimmie Gholson has responded to the motion by filing a declaration (Doc. 100) and a motion to dismiss the motion (Doc. 101), which the Court construes collectively as a response to the motion for summary judgment. Lockridge replied to Gholson's response (Doc. 106).

**I.      Background**

Gholson, an inmate currently housed at the United States Penitentiary at Marion, Illinois, alleges in this *Bivens* action that Lockridge, a lieutenant at USP-Marion, was deliberately indifferent to his serious medical needs in violation of the Eighth Amendment when he did not perform an injury assessment required by Bureau of Prison's policy after Gholson was involved in an altercation with other inmates on January 5, 2004.

According to Gholson's deposition testimony, on January 5, 2004, he had an altercation with other inmates and was injured. Lockridge, the "operational lieutenant," responded, handcuffed Gholson, asked everyone involved if they were okay, to which there was a collective response indicating that everyone was okay. Lockridge then took Gholson to the Special Housing Unit ("SHU"). According to Gholson, when they arrived at the new unit, Lockridge observed that Gholson had an injury, photographed the injury, laughed and commented that

Gholson had a "big egg that's sitting inside [his] forehead," placed Gholson in the cell and walked away. Gholson states that at that time he asked Lockridge for medical help but received none. Plaintiff also testified that Lockridge said plaintiff would get to see a physician's assistant ("PA") later, but a PA never examined Gholson. Gholson believes Lockridge failed to get him medical attention when he could see that Gholson was injured and when Gholson had asked for care. Gholson also asserts that, as operational lieutenant, it was Lockridge's responsibility to ensure Gholson received an injury assessment.

Gholson clearly states that Lockridge asked him if he was okay, and Gholson told him, "Yeah, I'm okay." According to Gholson's testimony, a PA was on the scene of the altercation. The PA asked if everyone was okay and everyone responded that they were okay and they appeared okay, so the PA left. Gholson now describes his injuries as a swollen head, two black eyes, being unable to see out of his eyes, and a fractured nose. Gholson states that he was not bleeding initially but was when he arrived at the SHU. Gholson described the bump on his forehead as being "bigger than his whole forehead," not the 4 cm x 4 cm mentioned in the PA's medical report.

Lockridge's affidavit does not contradict Gholson's basic version of events, except that Lockridge makes no mention of Gholson's asking for medical care or Lockridge's observation of any injury. Rather, Lockridge, who is not medically licensed and is not responsible for inmate medical care, notes that Gholson was immediately assessed by medical personnel.

The inmate injury assessment form dated January 5, 2004, purportedly filled out five minutes after the altercation by a PA and later approved by a physician, indicate that Gholson reported, "I'm ok nothing wrong with me," and that a 4 cm x 4 cm area of edema, mid forehead

2

was observed, but Gholson denied loss of consciousness. The injury was deemed a "superficial contusion," and Gholson was told to apply ice as needed for a 24-hour period.

According to medical records, the first medical assessment of Gholson's nose and sinus issues was December 6, 2004, during a routine medical exam. However, a letter from Gholson dated December 8, 2004, states that plaintiff had been asking for medical care since January 5, 2004, to no avail and that plaintiff had requested an x-ray and care for his nose. A review of Gholson's medical records (submitted in support of other defendants' motion for summary judgment) reveals that Gholson received quite a lot of medical attention between the January incident and December 2004 when nose issues are noted in the medical records.

In response, Gholson focuses on his visible "serious" head injury – the "egg" on his forehead – which Lockridge allegedly commented about at the time of the incident and for which Lockridge did not seek additional care. Gholson also cites a prison policy that every injury receive immediate attention.

**II.     Summary Judgment Standard**

Summary judgment is appropriate where "the pleadings, the discovery and disclosed materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). The Court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Chelios v. Heavener*, 520 F.3d 678, 685 (7th Cir. 2008); *Spath*, 211 F.3d at 396. Where the moving party fails to meet its strict burden of

proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson*, 477 U.S. at 247, or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); *Michas v. Health Cost Controls of Ill., Inc.*, 209 F.3d 687, 692 (7th Cir. 2000). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252; *accord Michas*, 209 F.3d at 692.

### III.     Analysis

As a preliminary matter, the Court considers as part of Gholson's "medical condition" what Gholson described in his pleadings – the egg-like bump on his forehead – as well as the bleeding upon arrival at the SHU, a swollen head, two black eyes, being unable to see out of his eyes, and a fractured nose. Whether Lockridge observed those injuries is part of the deliberate indifference claim regardless of whether the specific diagnosis was not known until later.

As for Gholson's argument that Lockridge's alleged violation of prison policy amounts to a constitutional violation, the argument rises and falls with his Eighth Amendment claim. The violation of a prison policy does not, by itself, establish a constitutional violation. *See Bradich*

*ex rel. Estate of Bradich v. City of Chicago*, 413 F.3d 688, 690 (7th Cir. 2005) (citing *Collins v. Harker Heights*, 503 U.S. 115, 122-124 (1992)).

Gholson cannot establish an Eighth Amendment claim against Lockridge.  The Eighth Amendment's prohibition on the unnecessary and wanton infliction of pain forbids deliberate indifference to a prisoner's serious medical needs.  *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006); *Zentmyer v. Kendall Co.*, 220 F.3d 805, 810 (7th Cir. 2000).  To prevail on such an Eighth Amendment claim, a prisoner must show (1) that he had an objectively serious medical need and (2) that the official knew that the medical need was serious but disregarded it.  *Johnson*, 444 F.3d at 584; *Zentmyer*, 220 F.3d at 810.

An objectively serious injury or medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Johnson*, 444 F.3d at 584-85 (quotations omitted).  A serious medical condition need not be life-threatening, but it should constitute "a denial of the minimal civilized measure of life's necessities."  *Johnson*, 444 F.3d at 585 (quotations omitted).  Liability will not attach where the injury appeared slight but later turned out to be serious; however, where an injury appeared serious and later turned out to be slight, liability will attach – anything else would be gambling with another's health or life.  *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991).

An official is deliberately indifferent if he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson*, 444 F.3d at 585 ("The standard requires that an officer have 'subjective awareness' of the serious medical need and then act with indifference to that need.").  "[A]n official's failure to alleviate a

significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Farmer,* 511 U.S. at 838. "[I]n determining the best way to handle an inmate's medical needs, prison officials who are not medical professionals are entitled to rely on the opinions of medical professionals." *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008) (citing *Johnson v. Doughty*, 433, F.3d 1001, 1011 (7th Cir. 2006)). Mere negligence will not create liability, nor will the provision of medical treatment other than that preferred by the inmate. *Estelle*, 429 U.S. at 107; *Burns v. Head Jailor*, 576 F. Supp. 618 (N.D. Ill. 1984).

    A.    <u>At the Altercation</u>

Initially, Lockridge and a PA were with Gholson on the scene shortly after the altercation. Lockridge inquired about whether everyone involved was okay. Just five minutes after the altercation, the PA assessed Gholson and recorded a "superficial contusion," measuring 4 cm x 4 cm. A physician later approved the PA's report and treatment plan, which only directed plaintiff to apply ice as needed. By Gholson's own account, at that time he told defendant Lockridge and the PA that he was okay. Whether it later turned out that Gholson's nose was broken or that the contusion was actually larger than 4 cm x 4 cm is irrelevant. There was simply no cause for Lockridge, who is not a medical professional, to have appreciated a risk of serious medical harm. In keeping with *Lee v. Young*, 533 F.3d 505, 511 (7th Cir. 2008), and *Johnson v. Doughty*, 433, F.3d 1001, 1011 (7th Cir. 2006), Lockridge is not liable for relying on the PA's assessment and treatment plan even if his assessment was erroneous in some respects.

B.  At the SHU

According to Gholson, upon his arriving at the SHU, Lockridge commented on the "egg" on Gholson's forehead, which the PA had already assessed.  By Gholson's account, he began to bleed when he and Lockridge arrived at the SHU, although the photos in the record shows that such bleeding was not clearly visible.  Gholson had two black eyes and a broken nose, although he admits the broken nose was not diagnosed until much later.  Lockridge does not dispute that Gholson asked for medical attention, but the record is clear that Lockridge believed Gholson's injuries were slight and had been tended to by the PA at the scene of the altercation.  In keeping with *Davis v. Jones*, 936 F.2d 971, 972 (7th Cir. 1991), and *Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996), this appears to be a situation where the injury appeared to Lockridge to be slight and the care given by the PA to be adequate, although the injury turned out to be more serious.

**IV.  Conclusion**

For the foregoing reasons, the Court finds that Lockridge was not subjectively aware of Gholson's serious medical needs that required more care than was provided by the PA at the scene of the altercation.  Accordingly, the Court **GRANTS** Lockridge's motion for summary judgment on Count 2 (Doc. 89) and **DIRECTS** the Clerk of Court to enter judgment accordingly.

**IT IS SO ORDERED.**
**DATE:  October 19, 2009**

                                                          s/ J. Phil Gilbert
                                                          **J. PHIL GILBERT**
                                                          **U. S. DISTRICT JUDGE**